# COURT OF ERRORS AND APPEALS,

## JUNE TERM,

## 1885.

JOHN V. RICE, late trading as JOHN V. RICE & Co., defendant below appellant, *v.* SAMUEL W. McCAULLEY, plaintiff below, respondent.

*Beginning of Suit—Action Pending.*

An Act of the Legislature, passed April 6, 1881, provided that the provisions of said Act should "not apply to any civil action or proceeding pending at the time of its passage."

A writ of summons was issued out of the Superior Court, February 23, 1881, returnable to the May Term following; and on May 15, 1881, said writ was returned "*non est inventus.*"

An *alias* summons was afterwards issued and service thereon obtained. *Held*, at the trial, that the issuing of the writ on February 23. 1881, constituted an action pending for the purposes of the said Act, and that the *alias* summons, in legal effect, was a continuation of the first writ.

(*June 3, 1885.*)

ERROR to the Superior Court in and for New Castle County. Heard before SAULSBURY, CH., and HOUSTON and WHITELEY, J. J.

A writ of summons in *assumpsit*, against the plaintiff in error, was issued at the instance of the plaintiff below on February 23, 1881, returnable to the following May Term of the Superior Court in and for New Castle County.

This writ was returned May 15, the first day of the term, "*non est inventus.*"

On May 25, an *alias* summons was issued, returnable to the November Term of the Superior Court, and was returned November 25, "*summoned personally.*"

On April 6, 1881, in the interval between the issuing of the first writ and the issuing of the second, the Legislature passed the following act:

"SEC. 1. No person shall be incompetent to testify in any " civil action or proceeding whether at law or in equity, because he " is a party to the record or interested in the event of the suit or " matter to be determined * * * ."

"SEC. 2. The provisions of this act shall not apply to any " civil action or proceeding pending at the time of its passage."

*16 Del. Laws*, 708.

At the trial of the cause, in December, 1882, the defendant offered himself as a witness in his own behalf.

Counsel for the plaintiff objected to his competency on the ground that the issuing of the writ of February 23, constituted an *action pending*, at the time of the passage of the above act; and on this ground the court rejected the defendant as a witness.

To this ruling the defendant noted an exception and took a Writ of Error. The question before the court, therefore, is whether or not the writ of February 23, which was returned "*non est inventus*," constituted an *action pending*, within the meaning of the exception contained in the Second Section of the above act.

*John B. Moore*, for plaintiff in error:

The *pendency* of an action means more than simply the commencement of an action. It is a term of greater intension, and suggests to the mind a larger number of attributes.

The vital idea of an action is a proceeding between parties, in a Court of Justice, for the purpose of determining some right, which is in dispute between them. The constituents of an action are a court, parties and a subject-matter.

The term *pending* means "depending," "remaining undecided," " in suspense."

Taking the two words together, an *action pending* means that there is some matter in controversy between parties in court, which has not yet been decided.

Pendency relates to the continuance of an action with respect to its decision or end, rather than to its continuance with respect to

its commencement. In relation to the pendency of an action, the commencement of an action may mean the commencement of the *proceedings that produce, or result in, pendency,* and therefore it is not equivalent to the commencement of the state of pendency.

The rule in chancery is that *lis pendens* begins from the *service* of the *subpœna.*

*Murray v. Ballou,* 1 Johns. Ch., 576; *Lockwood v. Bates et al.,* 1 Del. Ch., 435, 447.

In the civil law, an action is not said to be pending till it reaches the stage of *contestatio litis.*

*2 Bouvier's L. D., Art. Lis Pendens.*

The constituents of a pending action, or suit, are discussed in *Gregg v. Banner,* 2 Harr., 407, 411.

An action cannot, except by a fiction of law, be said to be pending, until the service of the writ, although the writ contains the declaration, and the issuing of it is considered the commencement of the action.

*Clindenin v. Allen,* 4 N. H., 385.

While there might be differences of opinions as to the particularity required, in the statement of the cause of action, to constitute pendency, the absolute essentiality of parties is very manifest. The case of *Gregg v. Banner, supra,* is a strong *a fortiori* case on this point.

To speak of an action as pending—" remaining undecided "— implies that the action is in the possession of a tribunal having power to decide it.

It is a universal principle that a court has no jurisdiction of an action, and consequently no power to decide it, until it has jurisdiction of the parties.

" In every court," says Blackstone, " there must be at least three constituent parts, the *actor, reus* and *judex.*

*3 Bl. Com.,* *25.

Until those constituents exist, the Court has no jurisdiction of the action; and without jurisdiction, no action can be said to be pending.

It is submitted, however, that under our practice, according to which the writ of summons contains only a most general statement

of the form of the action, an action is not, strictly speaking, pending until the filing of the declaration.

It was passed to aid in the administration of justice. It is, therefore, to be construed liberally, and the exception strictly.

The act is peculiarly applicable to the trial of causes, and the reasonable inference as to the intention of the Legislature in employing the term pending in the saving clause is, that it was deemed expedient to except from the operation of the act actions actually pending in court, where the parties had, perhaps, prepared their cause for trial, and arranged their proofs, with reference to a different rule of evidence.

It is stated in a general way by law writers that the prevalent rule in the United States is, that the issuing of the writ is the commencement of the action. But an analysis of the cases will show.

1. That in perhaps most of the States the commencement of actions is regulated by express statutory provision.

2. That the forms of process vary greatly and may thus in a great measure have determined the rule.

3. That they do not decide that the issuing of the writ, independently of subsequent service, is the commencement of the action, unless in the case of the Statute of Limitations, or cases analogous.

This fact, taken in connection with the fact that the rule must depend upon the peculiar practice and the statutes of each State, would make a particular inquiry as to the rule in each State as fruitless, as it would be tedious and in great part irrelevant.

Admitting, however, for the sake of the argument, that the term *pending*, as used in act of April 6, may be taken to relate back to the commencement of the action, it remains to consider the question, *when was this action commenced ?*

The rule as to what constitutes the commencement of an action has varied greatly in accordance with the practice in different courts.

*Burdick v. Green*, 18 Johns, *14, 20; *Treadwell v. Lawlor*, 15 How. Pr., 9; *Clark v. Helms*, 1 Root, 486; *Federhen v. Smith*, 3 Allen, 119; *Badger v. Phinney*, 15 Mass., 359.

In Massachusetts, however, the declaration is inserted in the writ and is a part of it.

*Ilsley et al. v. Stubbs*, 5 Mass., 280, 285.

In New Hampshire, the commencement of the action is dated from the issuing of the writ, but there, as in Massachusetts, the writ contains the declaration.

*Clindenin v. Allen, supra.*

That the difference in the forms of process is material, is made manifest by comparing the rule as to the commencement of actions in the Common Pleas in England, with the rule that existed in the court of King's Bench.

In the C. P., where the action was commenced by an original writ, the issuing of the *capias* was considered the commencement of the action.

*Leader v. Moxon*, 2 Bl. Rep., 925.

In the K. B., where a *latitat* was used to bring the defendant into court, the filing of the bill, or declaration, and not the issuing of the writ, was the commencement of the action, except in the case of the Statute of Limitations.

*Swancott v. Westgarth*, 4 East, 75; and cases cited.

The original in the C. P., on which the *capias* was founded, consisted of a statement of the complaint and a demand upon the defendant to satisfy it, and upon the refusal of the defendant to do so, process was issued to compel him to answer.

*App. 3 Bl. Com.*

But in the K. B., the writ of *latitat* was regarded as merely process to bring the defendant into court.

*Swancott v. Westgarth, supra.*

It thus appears that both service of process and a declaration were required in both courts to constitute the commencement of an action; for in the K. B. the action was not deemed commenced until the filing of the bill, and in the C. P. the *capias* presupposed, and was founded upon, a refusal on the part of the defendant to comply with the command of the court to satisfy the plaintiff's demand.

Aside, therefore, from any statutory provision, by analogy to the rules in the English courts, the filing of the declaration, and not the issuing of the writ, would be the commencement of the action in this State.

By a statutory provision, however, the writ is made the commencement of the action.

"Every writ used for the commencement of an action, shall "bear date on the day it was issued, and shall be returnable on the "first day of the term next thereafter."

*Rev. Code*, 633, Sec. 1.

It is furthermore admitted, that under this statute the date of the issuing of the writ that commences an action, may be considered the date of the commencement of the action; but it is submitted, that the statute does not make the simple issuing of the writ, independently of subsequent service, the commencement of the action. A writ may be issued and returned, and yet no action commenced.

It is the peculiar office of the writs mentioned in the statute, to bring the defendant into court; and it is in this way that they commence the action.

It is by the service of the writ that the court acquires jurisdiction, so as to proceed in the action, although, if the writ prove effective, the action may be considered as commenced from the time the writ was issued.

But if the writ, which was issued to bring the defendant into court, fails of its object, and is returned *non est inventus*, the court has no jurisdiction and there is no action commenced.

There is an *ex parte* proceeding, an act of diligence, a commencement *sub modo*, which would suffice to save the plaintiff from the bar of the Statute of Limitations. But in that, and in no other sense can it be said that there is an action commenced.

If the first writ, the writ of February 23, commenced the action, where was the necessity for a second writ, and where was the authority to issue it?

An action cannot be commenced by two writs, and if two writs are used for the commencement of an action, the action must be taken to be commenced by that writ which proved effective. A second writ for the commencement of an action can be issued only on the ground that the first writ has proved ineffective and is *functus officio*, in other words, on the ground that the action has not been commenced.

*3 Bl. Com.*, 279, 280.

But under the practice in this State an *alias* writ of summons has no interior and vital connection with the first. It is simply a matter of convenience. The court is not brought a single step nearer to the determination of the cause by the first writ, nor is it put into the possession of the cause by it, so as to take steps towards its determination.

So far as the action itself is concerned, the writ that is served, whether *alias* or *pluries*, is the original writ in the action.

It has been so denominated in our practice.

*Rev. Code*, 645, Sec. 4.

The true and actual commencement of an action by the writ that proves effective, as contradistinguished from the constructive or fictitious commencement of an action by a writ that proves (for all other purposes) ineffective, is the only sort of commencement to which pendency can by any stretch of meaning be made to relate.

It is an utter misinterpretation of terms to say that when the writ of February 23 was returned *non est inventus*, there was an *action pending.*

*Anthony Higgins*, for defendant in error:

1. The issuing or sueing out of the writ is considered the commencement of the action.

*1 Tidd. Pr.*, \*14, Note (A) and cases cited; *Carpenter v. Butterfield*, 3 Johns. Cas., 145; *Bishop v. Wilds*, Admr., 1 Harring., 97; *Bunker v. Shed*, 8 Metc., 150; *Gardner v. Webber*, 17 Pick., 407; *Ford v. Phillips*, 1 Pick., 202; *Burdick v. Green*, 18 Johns., 14; *Caldwell v. Heilshu*, 9 Watts & S., 51; *Beckman v. Scatterlee*, 5 Con., 519.

Issuing the writ is a good commencement of the action to prevent the bar of the act of limitations:

*Bunker v. Shed*, 8 Metc., 150; *Gardner v. Webber*, 17 Pick., 407; *Haughton v. Leary*, 3 Der. & Batt., 21; *Burdick v. Green*, 18 Johns., 14; *Day v. Lamb.*, 7 Vt., 425; *Jackson v. Brooks*, 14 Wend., 650.

Or, to prevent the defendant setting off a promissory note assigned to him after the issuing of the plaintiff's writ.

*Evans v. Prosser*, 3 T. R., 186; *Carpenter v. Butterfield*, 3 Johns, Cas. 145; *Haughton v. Leary*, 3 Dev. & Bat., 21.

2. The first writ of summons was the commencement of the action :

The *alias* writ which recites the first writ, was merely its continuation and therefore the action was pending from February 23, 1881, the date of the issuing of the first writ.

*1 Tidd Pr.*, 128, 154; *2 Tidd.*, 1124; *Angell on Limitations*, 339; *2 Saund. Plead. and Ev.*, 1302; *Harris v. Woolford*, 6 T. R., 617; *Parsons v. King*, 7 T. R., 6; *Stanway v. Perry*, 2 Bos. & Pul., 157; *Pennock v. Hart*, 8 Serg. & R., 369; *Bank of Orange Co. v. Haight*, 14 Wend., 83; *Davis v. West*, 5 Wend., 63; *Etheridge v. Woodley*, 83 N. Car., 11.

3. The uniform practice in this State has been to award an *alias* or *pluries* summons on a return of *non est inventus* on the prior writ or writs, and to treat the first writ as the commencement of the suit, and as an integral part of the suit for all the purposes of the case.

(1.) The costs of the first writ are always taxed on a judgment where the defendant is brought into court under an *alias* writ.

(2.) Where an affidavit and copy of the cause of action are filed under the first writ, the practice is to give judgment for want of an affidavit of defence without requiring the affidavit and copy to be filed under the *alias* summons on which the defendant appears.

(3.) Judgment in *Scire Facias* on mortgages are constantly taken under an *alias* writ with two returns of *nihil*.

This practice has been judicially approved by this court, and the rule was laid down that it is not a fatal error if the last writ of *Scire Facias* do not refer to the first.

*Bauduy v. Bradun*, 1 Harring., 182.

*Houston, J.* :—This is purely a question of law involving the construction of the words of a statute passed by the legislature on the 6th day of April, 1881, providing in the first section that no person shall be incompetent to testify in any civil action or proceeding whether at law or in equity, because he is a party to the record or interested in the event of the suit or matter to be determined, and in the second section that the provisions of the act shall not apply to any civil action or proceeding pending at the time of the passage of the act; and the only question to be determined in

the court below was whether a writ of summons issued in an action of assumpsit out of the court below at the suit of McCaulley against Rice, on the 23d day of February, 1881, returnable on the first day of the next May Term of that court, and returned on that day, the 15th of May, 1881, by the sheriff *non est inventus*, constituted without a service of the writ on the defendant in it, any civil action or proceeding in the suit pending at the time of the passage of the statute within the meaning of that word as thus employed in it?   An *alias* summons was issued on the 25th day of May in the usual form which was served and returned at the next term when the defendant appeared, and the case having been afterwards pleaded to issue on the trial of it, he was called as a witness to testify, and was objected to on the other side as incompetent because he was the defendant in the case, and the above question then having been raised the court below held that he was not competent witness in the case within the meaning and intention of the second section of the statute; and that is, of course, the same question of law now to be determined by this court, and which involves no question of equity whatever before this tribunal, any more than it did in the court below.

It is admitted by the counsel for the plaintiff in error that under our general statute and the established practice of the Superior Court of this State, the writ or summons first issued in this case constituted in law the commencement of the action, but his contention is that, as it was not served on the defendant and was returned *non est inventus* to the next term of the court, it failed to have any legal effect whatever, and therefore there was not any civil action or proceeding in the suit so commenced on the 6th day of April, 1881, when the statute was passed.   Or, in other words, that without service of the summons first issued upon the defendant in it, there was, according to the technical signification of the terms, no *lis pendens* in the case at that time.

The first authorities cited by him for the rule on this subject and in support of the point made by him were *Murray v. Ballou*, 1 Johns Ch. Rep., 566, and *Lockwood v. Bates et al.*, 1 Del. Ch. Rep., 435; both cases in chancery where the rule upon a principle of equity purely has long been recognized and established with greater uniformity in the decision upon it, than has been in the

courts of law, where no principle of equity was involved, but the time of the commencement of the action and whether it was barred by the plea of the statute of limitations, and in other similar cases, was the only material question involved in them in respect to the rule.   In the case first cited of *Murray v. Ballou*, a bill was filed in the Court of Chancery of New York against a trustee of real and personal estate for the benefit of a married woman, by the latter for a breach of the trust, to enjoin him from acting as trustee, or selling any of the trust estate, or the securities or funds thereof, and for the appointment of a receiver.   After the subpœna had been issued and served upon him in the case, he sold a portion of the real estate of the trust to Ballou and took his bond and mortgage for the consideration, which were afterwards assigned to another person by the name of Hunt, by whom the amount of them was subsequently paid to the trustee.   A bill was afterwards filed in the court by the receiver against Ballou and Hunt to set aside the sale of the premises on the ground that they both had knowledge of the suit pending against the trustee when they purchased the premises, but which they denied in their answers. There was no proof to contradict the answers, but Chancellor Kent held that though he had no knowledge of the suit when Ballou bought the premises which had then been pending a year in the court, it was not pretended that he was ignorant of the existence of the trust, and it was to be presumed from his silence that when he purchased the land from Winter, he knew that Winter held and sold it, not in his own right, but as trustee.   The bill charged that it was generally known at the time of the sale that Winter's authority was questioned.   The answer went no further than to deny any knowledge of the chancery suit, or of the injunction, or of any suspension or defect of authority in Winter to sell.   The answer of Hunt was to the same limited extent; and the probability was that it was a matter of public notoriety at the time that Winter held the large real estate in his possession as a trustee.   And after some further comments on the circumstances of the case the chancellor proceeds to his conclusion, as follows :

" Admitting that Ballou had no knowledge in fact of the suit when he made the purchase, he is nevertheless chargeable with legal or constructive notice, so as to render his purchase subject to the

event of the suit.   The established rule is  that a *lis pendens*, duly
prosecuted, and not collusive, is notice to a purchaser so as to affect
and bind his interest by the decree; and the *lis pendens* begins
from the service of the *subpœna* after the bill is filed.   And which
he further says was no more than an adoption of the rule in a real
action at common law, where if the defendant aliens after the
pendency of the writ, the judgment in the real action will over-
reach such alienation."   And the reason for which we may add both
at common law and in chancery is that when the suit involves the
right of the plaintiff to real estate in the possession of the de-
fendant in it, the jurisdiction of the court over it forbids that the
adjudication of his right to recover it according to law or equity,
shall not be prevented or defeated by the defendant; sale and con-
veyance of it to another during the pendency of the suit.

   And to the like effect was the decision of the Court of
Chancery in this State on the same rule in the second case cited,
*Lockwood v. Bates, et al.*   For our present purpose it is enough to
say of the facts established in that case that a bill had been filed in
the Court of Chancery at the suit of James Clayton, Samuel Lock-
wood and Armwell Long, three members of the firm of Mitchell,
Lockwood & Co. against John Mitchell, the remaining member of
it, to obtain a settlement of the affairs of the partnership by
Mitchell who had been the active partner.   The cause was pro-
ceeded in to a hearing at the August Term, 1823, and the final
decree of the Chancellor was entered in it on the 8th day of
August, 1825.   By it the rights of the several partners were ad-
judged, and the defendant, Mitchell, was ordered to pay to them
their several shares of the net partnership assets.   As part of the
decree, he was ordered to pay to Samuel Lockwood, one of the
partners, the sum of $1,818.95.   Pending the suit for the settle-
ment of the partnership, Samuel Lockwood was indebted to John
Mitchell in a judgment bond for the real debt of $3000, dated
December 3d, 1817, on which judgment was entered in the Court
of Common Pleas on the 9th of January, 1819, subject to a credit
of $1,000 on the judgment as of February 11th, 1818, but leaving
with the interest in arrear a balance due to Mitchell larger than the
sum due from him to Lockwood under the decree in the partner-
ship suit.   On the 8th of December, 1824, while the partnership

suit was pending, Mitchell executed a written assignment of the judgment he held against Lockwood, to Martin W. Bates, in trust for certain creditors of Mitchell. Notice of this assignment was given to Lockwood on the 5th of November, 1825, and on the 22d of June, 1830, the judgment was marked on the record "for the use of Martin W. Bates, as per assignment to him dated the 8th of December, 1824."

Several years afterwards Samuel Lockwood filed his bill in the court against Martin W. Bates and others, setting forth the above stated facts, and prayed that he might have the benefit of the decree made in 1825 in the partnership suit, by way of set off against the judgment due from him to Mitchell, and now standing for the use of Martin W. Bates in trust. The answer, admitting the facts set forth in the bill, relied upon three grounds of defence, but only one of which it is necessary for us now to notice, and that was, that the assignment of the judgment against Lockwood in trust for creditors having been made on the 8th day of December, 1824, prior to the decree in the partnership suit in 1825, the rights of Lockwood's creditors under the assignment could not be affected by the subsequent decree against Mitchell, the original judgment creditor. The chancellor held that Lockwood, the complainant, was entitled in a court of equity to set off against the judgment assigned to Bates for the creditors named of Mitchell, the sum decreed to be paid to him by Mitchell in the partnership suit, and as what he said on this part of the case in announcing his opinion is well and more concisely expressed in the syllabus of the report of it, we will quote from it his ruling in it on the particular question we are now considering. It is as follows:

"A *lis pendens* is constructive notice, not only to affect purchasers of the subject matter of the litigation, but also to protect all rights and equities arising out of it. In the present case the pendency of a suit in equity resulting in a decree for the payment of a partnership balance by the defendant to his co-partner, which the latter sought to set off against a judgment due from him to the defendant, *held* to be constructive notice of the co-partner's equity to an assignee of the judgment who took pending the litigation."

We have thus referred particularly to two cases in chancery cited in support of the construction of the words of the statute

contended for in this case by the counsel for the plaintiff in error, to show the meaning and purpose of the rule of *lis pendens* when resorted to by courts of equity, and why it has been held in courts of equity that the subpœna must not only have been issued on the filing of the bill, but must also have been served upon the defendant in the case, to warrant the application of the rule of *lis pendens* to it; and the reason for that was that where an innocent purchaser for a fair and valuable consideration and without any knowledge that it was a subject matter of litigation in a suit, bought a tract of land of the defendant, and there was no proof that such a purchaser, or that even the defendant then had actual notice or knowledge that the suit had been commenced against him, no court of equity could have ruled that either had constructive notice of it, until the subpœna had been served upon the defendant, but the service of it being actual notice to him that the suit had been instituted against him, they were prepared to hold, and have for a long time firmly held, that it constituted constructive notice of it, even to such a purchase; and as the hardship of the rule in such a case was strongly pressed upon the consideration of Chancellor Kent by the counsel for the purchasers in the case before him, much of his opinion was devoted to the support and vindication of it in that case. And in the second case cited, as the partnership suit had proceeded to a hearing before the chancellor on the bill and answer filed, and was awaiting his final decree in it when Mitchell's judgment against Lockwood was assigned to Bates, in trust for the creditors of the former, and which without the relief sought in the subsequent suit in that court by Lockwood against the assignee, Bates and others, with such notice of the subject matter of the litigation between Lockwood and Miller in the partnership suit, as would have defeated Lockwood's equitable right of setting off the sum due to him from Mitchell under the decree against the judgment, the reason was the same for the chancellor's holding that as the assignment was made pending the partnership suit, it was constructive notice to the assignee of the judgment of Lockwood's equity to set off the sum due him from Miller, the assignee of it, against the judgment.

But in the case now before us, commenced and prosecuted as it was with all due diligence in the established mode of procedure

in such cases to verdict and judgment in the court below, there is no question involved as to either actual or constructive notice of the institution of it to the defendant, or particularly, to another person to whom he had conveyed or assigned his interest in the subject matter of it, with the view of defeating the recovery of the plaintiff by thus divesting himself of his interest in it after the commencement of the action ; and therefore the rule of *lis pendens*, as stated and applied by Chancellor Kent in the case referred to, can have no application to the case before us, and it is equally manifest that it could not have any application to even a real action at common law whence courts of equity originally derived it, without such a conveyance of his interest in the premises to a third person pending the action, according to his exposition of the rule in that case. On the contrary, in this case in the court below the question simply was, and it is the same here, whether in the meaning and intention of the legislature as expressed in the words of the statute, the first or original summons in it having been issued prior to the passage of it, returnable to the next May Term of the court, which was after the passage of it, and remaining or hanging in the mean while in the sheriff's hands for service on the defendant who had no place of abode in the State, or where it could be served by his leaving a copy of it, and was not served, but returned *non est inventus* by him to the next term, it was, or was not a civil action or proceeding pending during that time, and particularly, at the time when the statute was passed, which was the 6th day of April in that year.

If the words of the act merely were "any civil action pending" at the time of its passage should be within the provision of the preceding section of it, although it would not even then be free from any doubt that the legislature intended to use the words in the technical sense contended for, and to constitute it a *lis pendens* it was, at least, necessary that the summons should have been served by that time upon the defendant, but the addition to them of the other word "or proceeding," renders the meaning of the legislature in the use of them in this connection, the more uncertain in that respect. For a civil action of any kind in the courts of our State, all of which are well known and ascertained in our practice, has a legal signification, as fixed an definite as can be claimed perhaps,

for any other legal names or terms, and in its general sense embraces all the proceedings of record in it from ·the original writ with which it is commenced to the verdict and judgment with which it concludes, when it has been regularly prosecuted and conducted through all the progressive stages of it from such a commencement to such a conclusion. It may, however, be terminated in various ways in the mean time, but until it is terminated, it is usual to say, even in court, and in language generally well understood out of it, that the action is pending, and which by a figure of speech in the terms of the civil law, "*lis pendens*," is likened to fruit forming and growing in the stages of its development, but yet *hanging* by its roots or stem. There are, however, other civil proceedings of several kinds in our courts of law in which the testimony of witnesses is required and heard, but which are not considered or denominated actions of law, because they are commenced without the issue and service of any original writ upon the other party, and prosecuted and conducted without any declaration or pleadings filed, as in all civil actions at law is prescribed and reqnired in them. And in such a proceeding so commenced and conducted, it may well be doubted whether the rule of *lis pendens,* as defined and contended for by the counsel for the plaintiff in error, could be properly applied, because it was not commenced by an original writ served on the defendant, as in an action at law. And yet, it is quite as common in court, and out of it, to apply the term pending to such a proceeding so commenced, as long as it continues before the court undetermined, or undecided, as to an action of law continuing before the court in like manner; and the statute itself applies the same term "pending" to any civil proceeding as to any civil action, and we therefore think the legislature intended to use the word pending in the connection in which it is employed in this statute, in the general sense in which it is now used and understood, and not in any more limited or technical sense in which the terms *lis pendens* have been defined and interpreted in any of the cases cited in the argument by the counsel for the plaintiff in error.

We do not think that there was any ground for the contention of the counsel that on the return of the first summons without service upon the defendant in it, and *non est inventus* to the next term of the court, it was then *functus officio* and became a nullity and of

no effect for all the purposes of the action which he admits was commenced by it. For by the long established practice in the Superior Court of the State, a summons so returned by the sheriff does not become null and void, if, as in this case, an *alias* summons, or another like it, is thereupon issued returnable to the next term of the court, but it constitutes a repetition and continuation of the former in its legal effect, so that the commencement of the action in such case dates from the issuing of the first, and this practice was early adopted here in analogy to the practice in the courts of England, so far as it was applicable to the more simple mode of instituting actions in our courts. It was issued as an *alias* summons, reference being made in it to the original summons in the regular form usual in such cases, returnable to the next term, and it was no less the function and office of it to preserve the action as commenced by the original writ, than to effect what it had failed to have accomplished, the service of such process in the action upon the defendant.

But both in the courts of law in England and in the courts of law in this country in which it has been held in regard to the rule of *lis pendens*, and as a general principle, that the issuing of the original writ in it does not constitute the commencement of an action, they have all held to the contrary, when the time of the commencement of the action for any reason became material, as in the case of a plea of the statute of limitations against it, or of a tender, which must have been made before the suit was brought to be a legal defence, and in various other cases when it became material to determine when in point of fact the action was commenced; and in which it has uniformly been held that the issue of the original process in it was the commencement of the action. And such cases clearly show that notwithstanding the rule contended for, the courts in both countries have exercised a good deal of discretion in departing from it in their decision of them. And in this case which turns upon the interpretation of a recent statute of our State, and the meaning of the word " pending " merely, as employed in it, we think we are warranted for a like reason in holding that it was employed, not in the technical sense of the latin word *pendens* in the rule, but rather in the sense of the word

" commenced " in our language, in which it is more generally understood. For although it is not a statute of limitations, the section of it in question was solely to limit and restrict, according to the meaning of the word " pending " used in it, as we think, the initial operation and application of the act to civil actions or proceedings commenced after the passage of it, or, in other words, that it should not apply to any commenced before the time of the passage of it.

We therefore think that the judgment of the court below should be affirmed.

SAULSBURY, CHANCELLOR, dissents.