J. JULIUS LEVY, SAMUEL K. MITCHELL and ELLSWORTH S. KELLAR, as Trustees in Bankruptcy of Tower Magazine, a corporation of the State of Pennsylvania, *v.* FREDERICK M. KIRBY and FREMKIR CORPORATION, a corporation of the State of Delaware.

(*June* 18, 1937.)

RODNEY and SPEAKMAN, J. J., sitting.

*Ivan Culbertson* for plaintiffs.

*Aaron Finger* for defendants.

Superior Court for New Castle County, No. 124, May Term, 1937.

RODNEY, J., delivering the opinion of the Court:

We propose to briefly consider the question of taking depositions in actions at law in Delaware, and in so doing it may be necessary to distinguish such actions from proceedings in Equity. Certain general principles seem so well established as to make citations unnecessary. It is clearly established that the taking of depositions was long known to and an established part of Equity, admiralty and ecclesiastical jurisdiction in England. At common law the right of taking despositions was unknown in actions at

law and it was deemed the right of the parties to have witnesses produced and examined *viva voce*. The Court could only compel the taking of evidence by deposition by deferring the trial for the production of witnesses until consent was given to the taking of the depositions.[1] It was not until 1772 (13 *George III*, c. 63) that a statute gave the right in law actions to take depositions and such statute (8 *Hals. Stat. of Eng.* 191) applied only to India. It was not until 1831 (1 *William IV, c.* 22) that such right was extended to the entire English Empire.

As a consequence of the lack of jurisdiction of law Courts at Common Law to the taking of depositions and the reliance upon Statutory or Constitutional provisions, or rules of Court pertaining thereto, it is generally held that the authorizing provisions must be strictly, or at least substantially, complied with.[1]

In Delaware the *Constitution* of 1792 created, for the first time, a separate and distinct Court of Chancery, and also provided for the taking of depositions in law actions. By *Section* 7 of *Article* 6 of the *Constitution* of 1792 there was adopted the exact language set out in the statement of facts, and this language has been continued in every constitutional revision.

There are, and have been in Delaware since 1792, two distinct kinds of depositions—first, *de bene esse,* and secondly, those which for want of a better name may be called general depositions. *De bene esse* commissions to take testimony are conditional or provisional in nature and this, of course, refers to the fact that the evidence so taken may not be used if the witness is available at the trial. The Constitutional provision, it will be noted, provides for the taking of testimony *de bene esse,* upon interrogatories, of

[1] *O'Neill v. Cooles,* 3 *W. W. Harr.* (33 *Del.*) 541, 140 *A.* 648.

witnesses who are aged, very infirm or going out of the State. The consideration of these provisions brings us logically to the contentions of the defendant.

The defendant contends that a commission to take testimony *de bene esse* can be issued only with reference to the testimony of a resident of the State. This, we think, is not strictly correct. It was decided at an early date (1838) in *Porter v. Beltzhoover, 2 Harr.* 484, that the testimony of a non-resident brought into the State for the purpose could have his testimony taken *de bene esse* provided he was going out of the State and actually went out before trial. The power of the Court to take the evidence *de bene esse* depends not on the actual residence of the witness but upon the fact of his presence in the State at the time of taking the deposition and of the jurisdiction of the Court over the witness at the time of trial. The distinctive feature of a *de bene esse* commission to take testimony is, as we have seen, that it is "conditional or optional," that is, conditional on the inability of the witness to attend the trial, and the Constitution states the essential conditions when it allows such testimony to be read in evidence "in case of the death or departure of the witnesses before the trial, or inability by reason of age, sickness, bodily infirmity, or imprisonment, then to attend."

The existence of these essentials is to be determined by the Court at the time of trial and if none appear there exists the correlative power of the Court to compel the attendance of the witness at the trial. The entire theory of the constitutional provision would be nullified by the construction that a *de bene esse* commission could be exercised outside of the State, and at the trial the testimony could be read in evidence merely upon the refusal of the witness to attend, the Court, of course, being without power of compulsion.

In *Boston v. Bradley's Executor, 4 Harr.* 524, a commission to take testimony *de bene esse* was issued to examine a witness who intended to leave the State. After the summoning of the witness, but before the testimony could be taken, the witness departed. The Commissioner followed the witness and took the testimony outside of the State. It was objected that testimony outside of the State could be taken only on a general commission and not on a commission *de bene esse.* The Court held that the Constitutional provision had reference to persons within the State and about to leave, and that since the commission had issued in time the execution was not barred by the fact that the witness had crossed the State line. This case should have no place in the State Reports if *de bene esse* commissions could be utilized to take the testimony of witnesses outside the State who had never been within the State, and so we think that a *de bene esse* commission cannot issue to take the testimony of one who is not shown to have ever been within the State of Delaware.

Testimony outside of the State is amply provided for by the provision that the Court had "also the power of obtaining evidence from places not within the State."

Secondly: The plaintiff contends that a commission to take testimony exists under the Constitutional provision in any civil cause "when pending" and that his cause was pending after the issuance of the original writ, notwithstanding the fact that there is now only partial service and no pleadings save a declaration. For this he cites *Rice v. McCaulley, 7 Houst. (Del.)* 226, 31 *A.* 240.

The defendant contends that a deposition can be taken only after issue is joined when the materiality of the proposed testimony can be determined.

In *State to Use of Harbeson v. Jones, 2 Harr.* 393, Chief

Justice John M. Clayton and Judges Harrington and Layton were of the opinion that a deposition to be executed outside of the State could not be issued prior to appearance of the defendant.

We are of the opinion that when the framers of the *Constitution* of 1792 first invested the law Courts with power to take testimony by depositions they utilized the well established practice of the Court of Chancery. In the Court of Chancery there were two special original Bills for the preservation of testimony—Bills to examine witnesses *de bene esse* and Bills to examine witnesses *In Perpetuam Rei Memoriam*. The first of these two Bills was quite uniformly used as ancillary or auxiliary to a pending action at law or in equity; the second lay when no suit had been brought but was anticipated or feared and it was desired to perpetuate testimony likely to be lost. When power was given to the Superior Court to issue depositions in a civil cause "when pending" such language aptly extended to the law Court the benefit of the Equitable Bill *de bene esse* as distinguished from the Bill to Perpetuate testimony which was never used in a pending suit.

The taking of testimony *de bene esse* was a power given to the Superior Court to preserve and insure testimony in a pending cause, but it was a power to be exercised for definite purposes, namely, the preservation of testimony pertinent in the pending case. So the Court in *State to Use of Harbeson v. Jones, supra,* held that the testimony could not be taken without notice to the opposing side of the interrogatories and opportunity to cross examine. It has been said that the rationale of depositions *de bene esse* is founded on the old Chancery practice of *Bills of Discovery,* 8 *R. L. C.* 1131. When the Legislature by the present *Section* 4703 of *Revised Code* of 1935 gave to the law Courts a large portion of the field of *Bills of Discovery viz. Production of Documents,* it was provided that such documents must con-

tain evidence "pertinent to the issue" and Courts have held that the production could only be required after issue was joined between the parties. *Kelly v. Mutual Life Benefit Ass'n,* 1 *Marv. (Del.)* 183, 40 *A.* 954; *Leib v. American Nat. Mortgage Co.,* 3 *W. W. Harr.* (33 *Del.*) 252, 138 *A.* 277.

We are of the opinion that the only testimony that can be taken on deposition is testimony material or relevant to the pending cause and this cannot be determined until there be some issue joined between the parties. Any other holding makes it impossible to restrain the examination within any known limits and this is the construction given to the analogous *Federal Statute. Stevens v. Missouri, K. & T. Ry. Co. (C. C.)*, 104 *F.* 934; *Levinstein v. E. I. DuPont de Nemours & Co. (D. C.)*, 258 *F.* 667; *Oklahoma Gas & Electric Co. v. Bates Expanded Steel Truss Co. (D. C.)*, 296 *F.* 281.

That the foregoing construction that testimony by deposition can be taken only after issue joined is more abundantly shown upon consideration of the remaining contention of the defendant that a deposition *de bene esse* must be based upon written interrogatories and not upon oral examination and from a consideration of the practice as set out in *Woolley's Delaware Practice,* §§ 582-613.

The Constitution, as we have seen, covers two distinct kinds of depositions, *de bene esse* to preserve the testimony of witnesses within the State, and regular depositions to obtain the testimony of witnesses from outside the State, and as to power of the Court over *de bene esse* commissions the Constitution uses the qualifying words "upon interrogatories." As to regular commissions operating outside the State the words do not apply. At an early date the Court formulated rules for the taking of depositions and for over a hundred years from the first Constitutional provision authorizing depositions the Rules covered only depositions

402

upon interrogatories, and today the Rules governing examinations by interrogatories and by oral testimony are entirely distinct. When, in 1894, the Rules first provided for depositions by oral examination, it was provided that the commission should be accompanied by a copy of the pleadings in the cause in lieu of interrogatories. This clearly shows, we think, that in order for depositions to issue in a given cause, such cause must be in such state of advancement that a copy of the pleadings can be obtained.

The petition to take the testimony is refused.